## NIMS *v.* PALMER.

The Act of May 3d, 1852, providing for the disposal of 500,000 acres of land granted by Congress to this State, is not in conflict with the Act of Congress of 1841, providing for their location after they are surveyed.

The State has the most perfect right to determine what shall constitute evidences of title, as between her own citizens, to all lands within her boundaries, and Congress has no power to interfere therein.

APPEAL from the District Court of the Fifth Judicial District, County of Amador.

This suit was brought to recover possession of a tract of land in the County of Amador, consisting of one mile square. At the trial, the plaintiff offered in evidence, to sustain his action, two certificates, commonly known as school land warrants, together with a certificate of survey by the county surveyor, locating said warrants on the tract in controversy; which evidence, on objection by defendants, was ruled out, and on motion of defendants a non-suit was ordered.

From the ruling of the Court with regard to the evidence, and from the judgment of non-suit, the plaintiff appeals. It appears from the record that the Court below excluded the testimony on the ground alone that the Act of the Legislature passed May 3d, 1852, was in contravention of the laws of Congress.

*Robinson & Beatty* for Appellant.

By Act of September 4th, 1841, Congress granted to certain States therein enumerated, and to each new State which thereafter may be admitted into the Union, for purposes of internal improvement, 500,000 acres of land, to be located in such manner as the Legislature may direct, conformable to sectional divisions and subdivisions of not less than 320 acres in any one location, on any public land of the United States, not reserved from sale by any law of Congress; and said locations might be made at any time after said lands had been surveyed according to existing laws.

California having been admitted into the Union since the passage of that act, is, of course, entitled to 500,000 acres of land, and the Constitution of the State, Art. 9, Sec. 2, appropriates the proceeds thereof to the purposes of education.

By act passed May 3d, 1852, the Legislature of the State made provision for the sale of said land, *before a survey had been made by the United States,* and appropriated the proceeds to the purposes above mentioned. The plaintiff has, it appears, complied with the provisions of that act in every respect; has paid his money, obtained his warrants, had a survey made, and all recorded; and by virtue of the act claims possession of the land in controversy.

I do not think it necessary to inquire whether the act of Congress admitting California into the Union with a Constitution which diverted

the liberality of Congress from the purposes for which it was designed, was a waiver on the part of the Federal Government of the condition attached to the grant. Neither shall I undertake to determine whether the act of appropriation and disposal by the State is invalid, because of its having preceded a survey by the General Government. I think the case may be disposed of on other grounds, so clear and unmistakable that to connect it with other matters will only embarrass, not elucidate.

This action is a possessory action. The statute under which the plaintiff claims, does not pretend to vest the title to the land in the claimant, but simply gives the right to the possession. Compiled Laws, 868, § 5. What shall constitute possession is a question purely of municipal law, and the power of a State to determine and define this, I have never before heard doubted. By the common law, ejectment will lie by one in possession against any who does not show a better title; and this rule has been frequently enforced by this Court. In such cases the possession must be actual, positive and notorious. Upon our statutes is also an act prescribing the mode of maintaining possessory actions by persons settled on the public lands, under which a person who has complied with its provisions has all the benefits of an actual possessor, though he is not required to be in the actual possession of any portion of the same.

The common law requires actual possession; by the statute certain acts are considered constructive possession, and to each a like dignity is ascribed. This law is daily enforced by our Courts, and its validity never questioned. Neither the provisions of the law concerning possessory actions, nor the principles of the common law above referred to, have ever been thought to contravene any legislation or policy of the Federal Government, and by virtue of which provisions numerous and large tracts of land have been obtained and maintained by the claimants thereof.

Now, the plaintiff claims only the same privilege under the act concerning school warrants, that is claimed and allowed by the common law to the actual possessor, and by the other statute to the man who shall mark out 160 acres by metes and bounds, and place on the same $200 worth of improvement, and occupy the same, or pay $15 to the County Clerk in excuse for his not occupying it. In this last case, the law says you shall be entitled to the possession if you do these things, and any one who intrudes upon your claim shall be held guilty of a trespass. In the case under consideration, the law says, if you will pay two dollars per acre into the State treasury, you shall obtain warrants for 640 acres of land, which, if you will have located, surveyed by the County Surveyor, and have the same recorded in the county where the land lies, you shall be deemed to be in the actual possession of the same, and any one who enters on the land thus surveyed and located, shall be deemed a trespasser.

In both cases the Legislature was certainly exercising its known and undisputable power—that of defining what shall constitute possession, and what shall amount to a trespass. What is possession, and what is trespass, are surely subjects within the scope of legislative authority.

It is contended, however, that if the propositions here laid down are true, that thereby the State could, or might, or does interfere with the primary disposal of the public lands by the United States, which, by the terms of admission of the State into the Union, it was stipulated should not be done. It will not be denied, it is presumed, that if a person should enclose, occupy and cultivate a thousand acres of public land, that the laws of the State would rightly and properly eject any intruder therefrom, and maintain the rights of the claimant to the possession thereof. Such a law has never been deemed to interfere with the disposal of the public lands by authority of Congress.

Between the case at bar and the case supposed, there is no distinction in principle.

The actual possessor will oust the intruder, not by a law of Congress, but by a law of the State. There is no law of the Union which authorizes any one to take possession of a tract of land except under a patent. There is no common law of the Union, and it is only by virtue of State legislation that the rights of possessors are maintained until a patent is shown. If the defendants had produced a patent from the United States, their argument would be applicable and good, but until then they stand, under the law, but as trespassers. It is true that no State legislation can interfere with the disposal of the public lands by Congress, and when it is shown that any particular portion has been so disposed of, the State cannot gainsay it. The State law cannot invalidate a patent from the United States. But the public land of the United States lying within a State is, like all other property within its limits, subject to the legislation of the State. The Federal Government does not now, and never has claimed the ownership of any lands lying within the limits of the States by virtue of any rights of sovereignty. It has claimed it as individuals claimed their lands, simply as proprietors or owners, not as sovereigns. Like all other lands, it is subject to the exactions of the State Government, may be taxed, may be appropriated or dedicated for the building of roads, and other public purposes, and is subject to all the general laws which control and regulate property, except that the United States may dispose of it unmolestedly. If the Federal Government has the exclusive power to determine the question of possession of the public lands; if it alone has the power to determine the rights of A and B in a suit concerning the possession of any portion of the public domain, it appears to me it would be in the exercise of the highest and rarest powers of sovereignty.

What rights have the defendants? By the law of the State we are in the possession, and they show no right under the laws of the State or Union. They do not claim under the United States. They show no title from her, but simply declare that the law which gave us our claim, contravenes the law of Congress. What law? why, the law, perhaps, which grants pre-emption rights.

Now, if there was a law which vested the title to the land absolutely in the pre-emptioner, such a law would have the same effect as a patent on the rights of the claimant under such law, and could not be gainsayed. But a pre-emptioner, under the laws of Congress, has no rights

until the patent issues; whatever rights he has, he obtains from State legislation.   "We think that, with the exception of a few cases, nothing but a patent passes a perfect and consummate title.   One class of cases to be excepted is, where an act of Congress grants lands, as is sometimes done, in words of present grant.   The general rule, however, is what we have stated, and it applies as well to pre-emptioners as to other purchasers of public lands."   13 Peters, 516.   "Until the patent issues, the fee is in the United States."   13 Peters, 451.   If, then, a pre-emptioner or a purchaser of lands from the United States, with his certificate of purchase in his hand, cannot bring his action of ejectment against a person in possession until his patent issues, how can he justify his entry on to the possession of another, under these claims, or defend a suit brought by such possessor for such intrusion? and by how much the more is one inexcusable who sets up no claim as a pre-emptioner, except such as has been commenced by a trespass.   The defendants were not occupants of the land when the warrants were located. It was then open, unoccupied, vacant.   Claiming, however, that every man should have a chance to pre-empt 160 acres, they entered on this land, and now contend that the State law which gave us the possession is invalid, because it interfered with that chance.   The State law says they are trespassers.   They answer, that may be, but after a while, in all probability, we shall procure patents to the land, and shall then cease to be trespassers; and, in the meantime, any law of the State which prohibits such trespasses is null and void.   The State, however, to say the least, has just as good a title to the 500,000 acres as the defendants to 160.   The title to both is inchoate and incomplete.   The State has as much right to locate and occupy its grant as the defendants to occupy theirs; and the State has located and occupied hers through the agency of the plaintiff, prior to the time when the defendants selected and occupied the same.

The defendants, by the law of the State, can claim the possession of their whole tract, though only occupying a part, or by paying $15 into the county treasury, without occupying any portion of it, and are defended and maintained in these rights by State legislation.   And the plaintiff invokes the same authority to defend and maintain him in his possession. which he has obtained by the location, survey and recording thereof, and the payment into the State treasury of twelve hundred and eighty dollars.

In addition to these views, it is further insisted that all the public lands lying within the limits of the State are, and of right ought to be, the property of the State; that Congress has no power over them, but that the primary source of title is in the State.

*Smith & Hardy* for Respondents.

Land granted by Act of Congress of April 4th, 1841, cannot be located until the survey by the General Government has been made. U. S. Statutes, Vol. 5, page 455.

The appellant seeks to avoid this by contending that this is not a permanent location, but is subject to the survey.

In reply, we hold that if it is a mere floating right, it cannot interfere with the actual possession of the respondents.

The doctrine that the State may prescribe the needful rules and regulations for the occupation of the land within the State, does not apply to the lands owned by the Government. For, by the Constitution of the United States, and the articles of admission of California into the Union, the primary disposal and regulation of the public lands is in Congress, and the State is expressly prohibited from interfering therewith. U. S. Statutes, Vol. 9, page 452.

In Wilcox *v.* Jackson, the Supreme Court of the United States has said, ".A State has a perfect right to legislate as she may please in regard to the remedies to be pursued by her citizens in her Courts, and to regulate the disposition of the property of her citizens by descent, devise or alienation. But Congress is invested by the Constitution with the power of disposing of the public land, and making needful rules and regulations respecting it." Wilcox *v.* Jackson, 13 Peters, 498.

Here we might rest. If Congress is alone invested with the power of disposing of the public lands, and making needful rules and regulations concerning them, it follows necessarily that the State cannot.

But it is urged that so long as the State does not interfere with the regulations or disposals of Congress, her legislation is constitutional and valid.

Here again the appellants are conclusively in error; for if Congress is by the Constitution invested with a power which they exercise or attempt to exercise, the States are precluded from legislation or action on the same subject, even though their action be auxiliary to that of the United States. Thornton's Case, 11 Illinois, 336; Prigg *v.* Pennsylvania, 16 Peters, 559.

The doctrine we are combating is no part of State sovereignty, and is not the subject of the same rules of construction.

We claim for Congress the exercise of a power which must be in Congress alone to be uniform throughout all the States. The appellant claims, however, that the Legislature has made the location of these warrants sufficient evidence of title to maintain possession against a wrong-doer or mere trespasser. This the Legislature cannot do, for, as has already been shown, the powers of pre-emption, the regulations of occupation, and the extent of rights on Government lands, are in the Congress of the United States. And the very title which the appellant relies upon, shows that he can take nothing by his title, until the United States surveys are made, and in order to recover, his rights must exist at the bringing of the suit.

Besides, Congress has already provided a means of acquiring and defending the possession of public lands in a different manner from this, and we hold the State has no power to provide other means.

These warrants were properly excluded as offering no evidence of title, and the non-suit was properly granted.

They were not properly located, and were not properly certified to.

The opinion of the Court was delivered by Mr. Justice HEYDEN-FELDT. Mr. Chief Justice MURRAY and Mr. Justice TERRY concurred.

The Act of May 3d, 1852, "providing for the disposal of the 500,000 acres of land granted by Congress to this State," is not in conflict with the Act of Congress of 1841, which provides for their location after they have been surveyed.

The State has the most perfect right to determine what shall constitute evidences of title as between her own citizens, to all lands within her boundaries, and the act in question does only this in reference to a portion of them.

The act of Congress relied on by the respondents, if of any force at all, cannot interfere with the domestic policy of the State, because Congress has no such power.

Judgment reversed and cause remanded.